T. Y. BRENT v. STATE.

173 So. 675.

Opinion Filed April 6, 1937.

*Julius F. Parker,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—This case brings for review judgment of conviction on a charge of grand larceny.

The facts established by the record most strongly against the accused are that in January of 1936 accused was employed by Mrs. Mary I. Goodwin and Mrs. Mary A. Ellis as a salesman and general helper in the making and selling of insecticides, soaps, etc.

On January 24, 1936, R. H. Davidson was handling the products sold by Mrs. Goodwin and Mrs. Ellis under the firm name of Premier Products Company in the Quincy, Florida, territory and the accused then advised Mrs. Goodwin that Davidson wanted more merchandise and that he had arranged to work in Davidson's territory with Davidson for two days and that he would take the goods which Davidson wanted to Quincy and work with Davidson the two days in that territory. Seventy-four ($74.00) Dollars worth of merchandise was prepared for transportation to Quincy, Mrs. Goodwin furnished her automobile and her negro driver to take Mr. Brent and the merchandise to Quincy. After arriving in Quincy Brent stored the merchandise in Davidson's garage. The evidence is conflicting as to whether or not the merchandise was delivered to Davidson. Davidson contends that same was placed in his garage for storage and the convenience of Brent; that he, Davidson, did not receive the goods or have anything to do with same. Brent claims that he delivered this merchandise to Davidson. The negro driver brought Mrs. Goodwin's car back to Tallahassee; Brent remained in Quincy and worked that territory with Davidson two days. Then he came back to Tallahassee and two or three days later,

at Mrs. Goodwin's suggestion, he made a trip to West Florida, Southern Alabama and Southwest Georgia to sell the Premier Products Company's merchandise. The record shows that he took with him certain merchandise, stopped in Quincy and got the merchandise which he had ostensibly carried there for delivery to Davidson, with exception of one can of merchandise which he could not pack into the automobile and which by agreement was delivered to Davidson to be paid for by Davidson. He made the trip into Southern Alabama and Georgia with the understanding that he should pay his traveling expenses from collections made on sales of the products which he took with him.

On the 20th of February the accused returned from the sales trip and returned to Mrs. Goodwin merchandise of the value of $19.00. During the absence of the accused on the Alabama sales trip Mr. Davidson had visited the place of business of Premier Products Company and, finding that the $74.00 worth of merchandise had been charged to him, advised Mrs. Goodwin that he had not received this merchandise but that same had merely been stored in his garage and that Mr. Brent had taken that merchandise, except the one can above referred to, with him on the Alabama trip. Thereupon, Mrs. Goodwin credited Davidson's account with an amount equal to the value of the merchandise and charged same to Mr. Brent. When Brent returned and brought with him $19.00 worth of merchandise he admitted that Davidson's statement of the matter was correct; that he had taken the merchandise, except the can referred to, on the trip to Alabama and had disposed of all the merchandise except the $19.00 worth in regular course of business. That his trip had been more expensive than it would otheerwise have been because the weather was very bad, and, at the request of Mrs. Goodwin, he had

picked up a nephew of hers in Alabama and paid his expenses for one week on the trip.

The accused continued to work for the Premier Products Company for more than a month after this occurrence and these goods remained charged to his account.

The merchandise unquestionably came into the hands of Brent by reason of his employment as the agent and servant of Mrs. Goodwin and Mrs. Ellis. As we read the evidence, it is established that on the Alabama trip the accused took the merchandise from Davidson's garage in Quincy to sell for Premier Products Company on that trip, on which trip he used Mrs. Goodwin's car, and paid the expense of a trip from the sales of merchandise; that he returned the merchandise which was not sold on that trip; that the trip, on account of bad weather, the additional expense incident to taking Mrs. Goodwin's nephew with him, at her request, and what is generally spoken of as "car trouble" and curtailment of sales by reason of weather conditions, resulted in a loss instead of a profit.

Mrs. Goodwin testified in regard to the employment of the accused: "He was to get him meals for odd work around there (meaning her place of business). He did not even have money for his meals and I gave him 40% of such net sales as he made and he got nothing on any sales that anyone else had anything to do with."

The accused testified to a different arrangement, which is not needful to be set out here.

Larceny is defined to be "the taking and carrying away from any place, at any time, of the personal property of another without his consent by a person not entitled to the possession thereof feloniously with intent to deprive the owner of his property permanently and to convert it to the

use of the taker or to some person other than the owner." See Driggers v. State, 96 Fla. 232, 118 Sou. 20; 36 C. J. 734.

It will be seen from the above delineation of facts that the record does not disclose the existence of the essential elements of the crime of larceny.

The record shows that all the merchandise taken by the accused from the place of business of Premier Products Company was checked out to him and delivered into his possession by the co-owner and manager of that business; that the merchandise was reported by the accused to Mrs. Goodwin as sold and was charged by her to his account and that he continued in her employ after she had full knowledge of the entire transaction and that thereafter she continued to furnish him with merchandise to be sold by him.

There is nothing in the record to indicate that when Brent returned from the Alabama trip and when Mrs. Goodwin was in full possession of all the facts regarding the disposition of the merchandise, that she then made any contention that his dealing in that regard had been dishonest or not in accordance with what he was authorized to do as her employee or agent.

The record shows that the court charged the jury as follows:

"You are instructed that if the defendant rightfully came into possession of all those articles listed in the information which he is charged with having feloniously taken, then he cannot be said to be guilty of the crime of larceny, for in larceny the taking must be felonious. Therefore, if from the evidence you should find that T. Y. Brent came into possession of the articles listed in the information as an agent of M. I. Goodwin or Mary Ellis with the consent and permission of both of them or either of them and that

later on the property was improperly disposed of, then you cannot find the defendant guilty of larceny because no felonious taking is present."

It appears that the jury disregarded this charge.

For the reason stated the judgment should be reversed and it is so ordered.

Reversed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.