## SPARKS JOHNSON, v. STATE OF FLORIDA

25 So. (2nd) 801            January Term, 1946
April 23, 1946                  En Banc

*W. F. Anderson* and *W. P. Chavous,* for appellant.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

THOMAS, J.:

We shall give at the outset a condensation of the witnesses' accounts of the misdeeds of Sparks Johnson which the jury weighed and found sufficient to establish beyond a reasonable doubt the breaking and entering by him of the property of R. E. Davis, Jr., and Dave Lang Scott with intent to commit grand larceny.

The place entered was a store where liquor was sold in packages.

Long after one midnight the appellant and two companions wakened the storekeeper and bought from him a bottle of whisky. This incident began with their kicking the door and ended with their kicking the storekeeper. Because of their rowdiness and their billigerent attitude the storekeeper, anticipating further trouble and having no means of protecting himself, locked the place and took a station in his car some distance away instead of returning to his living quarters in the rear of the shop. An hour later, from this vantage point, he saw the appellant and his confederates re-

turn, heard them shoot the lock from the door, and watched them proceed to remove several cases of whisky.

It was shown by other witnesses that they at first hid the loot in the bushes, then cached it in the cabin of an old negress who was ignorant of their marauding. When news of the pilferage was abroad, and evidently after a search warrant had been issued to locate the stolen property, a man who had taken no part in the crime, but who had assisted in disposing the booty afterward, drove to the house of the old negress, warned her that the liquor she possessed had been stolen, and told her to do away with it. Later this same person, accompanied by appellant, called on her and demanded that she produce the whisky or pay them $400. When she told them it had been destroyed they took what little money she had, choked her, and threatened that unless she raised the balance she would forfeit her life.

In passing, we may say that of the three who were implicated in this criminal transaction one (appellant) was convicted, one was acquitted, and the other testified in behalf of the state.

The circumstances we have recounted, which the jury chose to believe despite the categorical denial by the defendant, amply established commission of the crime charged. The appellant contends, however, that there was failure on the part of the state to prove beyond a reasonable doubt two components of the charge—namely, the intent to steal property of the value of more than $50, and the nonconsent of the owners. The first of these may be easily determined by simply referring to the testimony of one of the owners who, when asked whether the property taken was worth more or less than $50, replied, "More than . . . $50.00." This statement was unimpeached and uncontradicted; so the intent to steal property of the value of $50 was well established by the uncontroverted proof that after appellant and his accomplices had forcibly gained admission to the building they actually asported property of that value.

The appellant urges us to hold the judgment against him invalid because no direct testimony was given by the owners, only one of whom took the witness stand, that neither of them

consented to the property being carried away by the appellant. In support of this position he has cited our decision in Albritton v: State, 81 Fla. 684, 88 So. 623, where we recognized the rule that the nonconsent of the owner must be proved to justify a conviction of larceny and cannot be presumed from the taking. Unquestionably the court has recognized this prerequisite to a conviction of larceny. The question is the extent to which the state must go in proving this element of larceny when the defendant is on trial for breaking and entering with intent to commit that offense.

Lack of consent is an essential ingredient of larceny which may be defined as the taking and carrying away of the property of another without his consent and with intent to deprive him of it permanently. A more elaborate definition will be found in Driggers v. State, 96 Fla. 232, 118 So. 20, quoted in Brent v. State ,127 Fla. 626, 173 So. 675. In a prosecution for breaking and entering it is incumbent on the state to prove beyond a reasonable doubt that the defendant actually broke and entered and that when he did so he had the intent to commit some crime—in this case, grand larceny.

Beyond reasonable doubt the state proved that the defendant broke and entered the building, and we think the circumstances establish that at the time he intended to perpetrate grand larceny.

Turning to the same authority cited in Albritton v. State, supra, Underhill on Criminal Evidence, we find the statement that in prosecutions for breaking and entering "nonconsent need not be proved by direct evidence, but may be inferred from the circumstances." Even assuming that proof of lack of consent is as indispensable to a conviction of breaking and entering as it is to one of larceny, which may well be doubted, still we hold that this nonconsent may be established by circumstantial evidence where one is prosecuted for committing the former offense. State v. Patchen et al., 36 Nev. 510, 137 p. 406; State v. Bull, 47 Idaho 336, 276 p. 528; Underhill's Criminal Evidence (Fourth Edition) page 1207.

We are not disposed to apply in cases of this nature the rule evidently adopted in Albritton v. State, supra, that the state may resort to circumstantial evidence (in that case,

larceny) only where the absence of the owner is "satisfactorily accounted for." Only one owner testified, and he was not asked whether appellant was given leave to enter the building. The record is silent as to the whereabouts of the other owner, but we think the testimony thoroughly convincing that no consent whatever was given. It seems to us that it would approach the absurd to hold that positive and direct evidence on the point from the owners themselves would be necessary when there was abundant proof that the ruffians noisily wakened the clerk after the business was closed and he had retired; abused him when he sold them a bottle of liquor; returned in the early hours of the morning and removed the lock with gunfire; then departed, carrying several cases of the stock with them.

The remaining feature which requires comment and decision is the ruling of the trial judge on the requests of the defendant that "the Court . . . give the jury charges about taking this witness' testimony," made at the time the accomplice began his testimony, and that the "Court . . . charge the jury regarding the testimony at this time . . . ," made later during the examination. Though these requests are not clear in themselves, the circumstances plainly show that counsel for appellant desired an instruction at that time as to the caution with which the evidence should be received, a procedure sanctioned by this court in Bass v. State, 121 Fla. 208, 163 So. 485. Upon further reflection we arrive at the view that charges with reference to the testimony of accomplices constitute a part of the "law of the case" and have their rightful place with other such instructions "at the conclusion of the argument of counsel." Sec. 215, Criminal Procedure Act, Sec. 918.10, Florida Statutes, 1941, and F.S.A. Delivering the charge at the time of introduction of the accomplice as a witness places too much emphasis upon the weight which should be given his testimony, a disadvantage the state should not be required to suffer.

There are many occasions in the course of a trial when it becomes necessary for the court to give instructions with reference to the conduct of witnesses and jurors and particular items of evidence and the like, but it seems to us that

justice can be better dispensed if all advice from the court to the jury on the general subject of the law of the case is given as a whole after counsel have completed their argument and on the eve of the retirement of the jury to consider a verdict. It is at this time that the law governing the consideration of the testimony of all witnesses should be expounded by the court. When, upon the introduction of an accomplice, the court pauses to warn the jury that his testimony must be received with caution, this unquestionably singles out his story and all but condemns it. If such procedure were followed at the time the defendant took the witness stand in his own behalf, it is readily seen how his testimony would be prejudiced. For example let us suppose that at the outset of his testimony the court then and there advised the jury that he could testify the same as any other witness, but that it would be proper for them to take into account his interest in the trial and the result, and so forth. This would undoubtedly draw undue attention to the inherent weakness in his story, resulting from his intense interest in the outcome of the trial, and would impair his defense immeasurably.

The decision in Bass v. State, supra, seems to have turned on the literal meaning of the verb "received" in the instruction that " 'evidence on an accomplice should be received by the jury with great caution . . . ' " We think the word would not be inappropriate even if the charge were given with other charges at the end of the trial, but if it should be considered inept, we are not so wedded to the form that the word "considered" could not be substituted.

In the instant case the trial judge included a proper charge relative to the testimony of accomplices with the general one he gave the jury after arguments were concluded. We shall not reverse the judgment on that account. To the contrary, we approve that method, and in doing so recede from a view expressed in Bass v. State, supra.

Affirmed.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, ADAMS and SEBRING, JJ., concur.