(No. 37738.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVIS McCRACKEN, Plaintiff in Error.

*Opinion filed March 18, 1964.*

HARRY A. YOUNG, JR., of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant McCracken was indicted for burglary, theft and possession of burglary tools. He waived a jury, was found guilty of the crime of burglary after a bench trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of one to ten years. Defendant is here by writ of error contending: (1) that the trial court committed reversible error in denying his timely motion to suppress certain evidence; (2) that the trial court erred by not requiring proof of the actual ownership of the premises wherein the burglary allegedly was committed; (3) that the trial court failed to require affirmative proof of all the allegations of the indictment and all necessary elements of the offense of burglary, and (4) that the trial court made certain findings which were against the manifest weight of the evidence.

Defendant's motion was grounded upon allegations that certain articles taken from him without a warrant were obtained by an unreasonable search and seizure in violation of his rights under the Illinois constitution, article II, sections 6 and 10. At the pretrial hearing on his motion to suppress, defendant testified that he was arrested on March 3, 1962, at about 47th and Evans streets in the city of Chicago while walking along carrying a carcoat and clock-radio in his arm, and a screwdriver in his hand. McCracken said that he had bumped into a woman, and in turning around saw the police drive past and turn their squad car. He said that they then stopped him as he was walking, and asked him where he got the stuff. Defendant testified that he replied that a boy called him and told him to pawn it. On cross-examination defendant testified that he had been walking on 47th Street about 12:00 noon, after having been in the 4600 block of Drexel Blvd. about 11:00 A.M. to see a man named Young who had not been home and whose exact address defendant could not remember. Defendant

said he had not been in the building at 4636 Drexel and that he had obtained the coat and radio about noon at a location a block away from that address from a boy named Robert whose last name he did not know. Later, when questioned about his activities between 11:00 A.M. and noon he said he had obtained the articles about 11:15 A.M. after leaving Young's building. Defendant then related the details of his arrest stating that police office Pride stopped him and asked him what he had, and that he replied a radio and coat. He told Pride that a boy named Robert had given them to him to pawn. When questioned concerning the screwdriver McCracken said he obtained it from Robert, too, and had it in his hand when stopped by Pride. Lastly, he identified the articles as the screwdriver, coat and radio placed into evidence by the People.

Next, the complaining witness, Willie Fowler, in response to questions, established that he lived in an apartment in a building at 4636 Drexel Blvd.; that his apartment was burglarized on March 3, 1962, between 9:00 A.M. and 12:45 P.M., while he was absent therefrom; that he did not see any burglarizing; that when he returned at 12:45 P.M., on March 3, the door lock was broken, and his belongings were in disarray; that a carcoat which had been on the couch, and a clock-radio which had been on the dresser and running when he left, were missing; that after getting his landlord, he called the police who arrived about ten minutes later and reported the burglary about 1:00 P.M.; that he identified his coat and radio later that day at the police station; and that the coat and radio were the same items as People's exhibits No. 2 and 3, respectively.

Thereafter, officer Pride of the Chicago Police Department testified that on March 3, 1962, at between 12:25 and 12:35 P.M., he and another police officer were patroling the area and observed defendant emerge from an alley carrying a bundle. When defendant saw the police observing him, he began to run west on 47th Street looking back as

he ran. The officers were traveling east on 47th Street, but turned their patrol car around and overtook defendant about 120 feet from where he was first seen. After calling defendant over to the squad car, officer Pride got out and asked him what he was carrying, and how he had gained possession thereof. Pride said defendant showed him a car-coat and clock-radio, replying that a Robert Smith had given them to him to pawn and then they would split the money. According to Pride, defendant could not explain why Smith had not pawned the items himself. Pride asked for the items and defendant handed them over. Pride testified that when defendant handed over the clock-radio it read about 12:32 or 12:33, the same as it did the day of the trial. The officer said he then searched defendant and found a screwdriver concealed up his right sleeve above the elbow. Pride also testified that he and his partner were under orders to patrol this section of the city because there had been numerous daylight burglaries in the apartment buildings in the area. Moreover, they had the general description of alleged suspects, and Pride said that McCracken fit the description of one suspect in particular, which description had been received about March 1. In addition, Pride knew that some of the burglaries had occurred in the building at 4636 Drexel which was immediately adjacent to the alley from which defendant was emerging when first observed. Lastly, Pride had detained the defendant before for questioning as a known drug offender. Defendant now contends, among other things, that the trial court committed reversible error by denying the motion and allowing the screwdriver, coat and radio into evidence. We do not agree.

The defendant based his motion on the provisions of the Illinois constitution, article II, sections 6 and 10. Section 6 states: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit,

)articularly describing the place to be searched, and the persons or things to be seized." We have held that a search implies a prying into hidden places for that which is not open to view; and that a search implies an invasion and quest with some sort of force, either actual or constructive. (*People* v. *Woods*, 26 Ill.2d 557; *People* v. *Marvin*, 358 Ill. 426, 428.) Where, as here, the articles are in plain and open view and are observed by police officers under suspicious circumstances, it is not a "search" nor an unreasonable seizure for the officers to make a reasonable investigation hereof. (*People* v. *Woods*, 26 Ill.2d 557, 561; *People* v. *Stewart*, 23 Ill.2d 161, 169-170; *People* v. *Exum*, 382 Ill. 204, 211; *People* v. *Marvin*, 358 Ill. 426.) Moreover, when defendant willingly handed over the articles to the officer at his request this action implied consent to the examination. (*People* v. *Fiorito*, 19 Ill.2d 246, 256.) Hence, defendant cannot now complain that the articles which he carried in open view and willingly handed over were taken by an unreasonable search and seizure. *People* v. *Woods*, 26 Ill.2d 557, 561.

People's exhibit No. 1, the screwdriver, was obtained from the defendant by a search within the purview of the constitutional provisions. However, neither the constitution of the United States nor that of the Sate of Illinois forbids all searches and seizures, but the prohibition is only against unreasonable searches and does not extend to immunity from search upon a lawful arrest. (*People* v. *Fiorito*, 19 Ill.2d 246, 252.) Here the patroling officers knew that there had been previous daylight burglaries in the area generally, and in the building at 4636 Drexel Blvd. in particular. Shortly after noontime they saw a known offender matching a description of one of the suspects emerge from an alley behind 4636 Drexel carrying a bundle and begin to run the other way when he saw police watching him. Under these circumstances the officers had reasonable grounds for believing that the defendant had

committed a criminal offense, so the subsequent arrest and search, which revealed the screwdriver, were therefore lawful. See, for example: *People* v. *Faginkrantz,* 21 Ill.2d 75; *People* v. *Watkins,* 19 Ill.2d 11, *People* v. *Fiorito,* 19 Ill.2d 246. The motion to suppress was properly denied.

At the close of the hearing on the motion, it was stipulated that the testimony and the evidence in the hearing would be the same in the trial. Thereafter, the complaining witness was again examined and again stated that when he returned to his apartment about 12:45 he discovered his coat and radio missing. Fowler also described the type of lock on his door; that it had been smashed, and that he lived in an apartment building of four floors, occupying an apartment on the third floor with his wife. Finally, he stated that there was not one but two alleys behind the building. The trial concluded with this testimony and the court thereafter found the defendant guilty of burglary.

Defendant next contends that there was a failure to prove the ownership allegation of the indictment, and that fatal variances occurred in such proof as there was. Defendant does not question the sufficiency of the indictment which, in part charges that: "* * * Davis McCracken committed the offense of burglary in that he, without authority, knowingly entered into a building, to-wit: dwelling house of Willie Fowler, with intent to commit therein a theft, * * *", *etc.* However, defendant contends in his brief that, "* * * although defendant is charged with having committed a burglary in the dwelling house of Willie Fowler, it does not appear from the record on appeal that Mr. Fowler ever was directly asked or directly testified about the ownership of the apartment where he lived; nor is there any other evidence affirmatively establishing the ownership of the apartment wherein the burglary was allegedly committed." He relies on *People* v. *Mosby,* 25 Ill.2d 400, 402, which enunciates the general rule that the ownership, or possession of the dwelling, is an essential

allegation of an indictment alleging burglary, which must be proved as laid in order to safeguard the accused against double jeopardy.

· Although the rule stated in *Mosby* applies in every burglary case, our action there in reversing and remanding does not control here, because *Mosby* is clearly distinguishable on its facts from the instant case. In *Mosby* the persons in whom the ownership of the respective dwellings was laid failed to testify at all and their names were never mentioned by the other witnesses as having any ownership or possessory interests in.the premises. (See *People* v. *Mosby*, 25 Ill.2d 400, 401-402.) Here, however, the ownership of the dwelling was laid in Willie Fowler, the complaining witness, who actually testified at the trial. He established that, among other things, his home was burglarized on March 3, 1962, and that he lived in an apartment at 4636 Drexel Blvd. Such facts were established by the following exerpts from the record of Fowler's testimony:

"Q. Your home was burglarized, was it? (No objection raised.)

A. Yes, it was.

Q. What day * * *,?

A. March 3rd.

Q. What time?

A. It was between nine o'clock and 12:45.

Q. Did you see any burglarizing?

A. No, I didn't see anyone do the burglarizing.

Q. Where did you live at the time?

A. 4636 Drexel Boulevard.

Q. Were you absent from your home from nine to 12:45?

A. Yes, I was.

* * *

Q. Is this a single family dwelling?

A. Yes, its my wife and I.

THE COURT: It's an apartment though, isn't it?

A. Yes, it is."

Here the record establishes without a doubt that the testimony of Fowler directly proved that he was the occupant of, and made his home in the apartment at 4636 Drexel Blvd. Defendant's contentions to the contrary are without merit.

Defendant would also have us believe that a variance occurred in the proof of the location of the premises burglarized because at one point in the testimony the complaining witness was asked a question which mistakenly located his apartment at 4737 Drexel, rather than 4636 Drexel. The complaining witness did not then correct the examiner, but merely answered the question. We find no variance here because Fowler never testified that his apartment was at any address other than 4636 Drexel Blvd.

Defendant's final contention involves the quality of evidence required to prove the allegation that defendant was within the burglarized premises "without authority". The crime of burglary is set out and defined by the new Criminal Code as follows: "A person commits burglary when without authority he knowingly enters into, or without authority remains within a building, housetrailer, watercraft, aircraft, railroad car, or any part thereof, with intent to commit therein a felony or theft." Ill. Rev. Stat. 1961, chap. 38, par. 19—1(a)..

The indictment here is drawn in the language of the statute charging that the defendant, "without authority", knowingly entered the dwelling house of Willie Fowler, etc. Defendant contends that the charge that he entered "without authority" is an essential allegation of the indictmen, and as such must be proved by more than mere inference. Where, as here, the victim testified that his home was "burglarized," and the evidence raised no issue of authority, the proof is sufficient.

The defendant's remaining contention, that the remarks of the trial judge made upon his finding of guilty consti-

tuted a material finding of fact unsubstantiated by the evidence, is wholly without merit.

The judgment of the criminal court of Cook County is, therefore, affirmed.

*Judgment affirmed.*