People of the State of Illinois, Plaintiff-Appellee, v. Donald A. Savage and Joseph B. Crable, Defendants-Appellants.

Gen. No. 51,810.

First District, First Division.

November 4, 1968.

Rehearing denied January 24, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael C. Zissman, Assistant State's Attorneys, of counsel), and Dennis J. Horan, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a joint trial, Donald A. Savage was tried by a jury and Joseph B. Crable was tried by the court. Both defendants were represented by the Public Defender, and both were found guilty of the offense of "Unlawful Use of Weapons" (Ill Rev Stats 1963, c 38, § 24–1(a)(4)).

On appeal, defendants are represented by separate counsel. Both defendants contend that the trial court erred in refusing to grant their motions for substitution of judge. Defendant Savage additionally contends that his arrest and search were unlawful; that he was denied the right to be represented by competent counsel, and that there was insufficient proof of a prior conviction.

Three witnesses testified for the State: Warren Rife, a furniture salesman, and Chicago Police Officers Richard Crowley and John McMahon. The evidence shows that on December 6, 1965, defendants Savage and Crable, with Raymond Miller, entered a furniture store at 6151 South Halsted Street in Chicago. All three had their hands in their pockets, and Rife became apprehensive as to their intentions. He spoke to them three times, offering assistance. The men made no reply and gestured with their heads. After some time they left the store.

Rife followed the men from the store and stopped a passing police car. He spoke with Officers Crowley and McMahon and pointed out the men, who were walking south on Halsted Street. The men turned east on 62nd Place and Halsted. The officers drove their squad car to within 20 feet of the three men, got out, and Officer Crowley shouted, "Police officers, stop where you are." Savage turned and ran, and Officer Crowley gave pursuit. Crowley, running about 50 feet behind Savage, saw him discard a revolver. The officer captured Savage, placed him under arrest, and then went back and picked up the gun in a gangway where Savage had thrown it.

The chase and the arrest took approximately ten minutes.

While the pursuit of Savage was taking place, Officer McMahon stood with the other two men, one of whom was defendant Crable. The officer observed what appeared to be the end of a shotgun barrel protruding from beneath Crable's overcoat. He ordered Crable to drop the weapon, and when Crable failed to do so, McMahon pulled the third man (Raymond Miller) in front of himself and took aim with his service revolver. Crable then dropped the shotgun. McMahon picked it up and later found a live shell in the cartridge chamber.

All three defendants were arraigned on December 20, 1965, on indictments charging each with attempted robbery (65–3490); unlawful use of weapons (65–3491); and resisting a police officer (65–3492).

On December 27, 1965, the defendants filed verified petitions for substitution of judges, naming Judge Wells and Judge Plusdrak. The petition was allowed, and the case was reassigned to Judge Herbert R. Friedlund, where it was continued from time to time to March 3, 1966.

On February 28, 1966, defendants were arraigned on two new indictments: 66–570, charging the unlawful use of weapons in the same language as the earlier indictment (65–3491), and 66–571, charging conspiracy. At that time the new indictments were assigned to Judge Friedlund, where the prior indictments, based upon the same facts and circumstances, were pending.

On March 3 the indictments charging robbery (65–3490) and the unlawful use of weapons (65–3491) were nolle prossed by the State. The indictment charging resisting a police officer (65–3492) remained. On March 3, 1966, both defendants moved the court to grant a petition for substitution of judge. In support of the motion, defendant Savage alleged that he feared he would not receive a fair and impartial trial before Judge

<!-- redacted black bar -->

Friedlund, and that the knowledge came to him on February 28, 1966. The motion for substitution of judge was denied. At that time the trial court also denied an oral motion of defendant Savage that the court appoint for him a "Bar Association lawyer" instead of the Public Defender, who was then of record as his attorney.

The cause was then continued to March 15, 1966, when indictments 65–3492 and 66–570–71 were consolidated and continued for trial to April 5, 1966, when the State dismissed indictment 65–3492, which charged resisting a police officer.

On April 5, 1966, the trial proceeded on indictments 66–570 (unlawful use of weapons) and 66–571 (conspiracy). Defendant Crable waived his right to a jury trial, and the trial proceeded as a bench trial for Crable and a jury trial for Savage.

At the conclusion of the trial, the jury returned a verdict of guilty against Savage on the charge of unlawful use of weapons and found him not guilty on the charge of conspiracy. Trial Judge Friedlund thereupon found defendant Crable guilty of the unlawful use of weapons and not guilty of conspiracy. After a discussion between court and counsel regarding the previous record of defendant Savage, the court sentenced him to not less than five years and not more than ten years in the Illinois State Penitentiary and entered judgment on the finding. The court sentenced defendant Crable to a year in the county jail and a fine of $500, to be worked out at $5 a day.

Considered first is the contention that the court erred on March 3, 1966, in denying the petitions of both defendants for substitution of judge. It is asserted that the court did not conduct a hearing to determine the merits of the motion as contemplated by the statute, and no testimony was heard nor any evidence received. It is argued that section 114–5(c) makes it mandatory upon the trial court to conduct a hearing if the motion

for change is based upon "cause." Defendants argue that no hearing was held and, as the motion was supported by affidavit alleging prejudice of the trial judge, it must be presumed that the facts as alleged were true. Authorities cited in support include People v. Arnold, 76 Ill App 2d 269, 222 NE2d 160 (1966), where it is said (p 273):

> "The statutory provisions authorizing a substitution should receive liberal interpretation in order to permit rather than deny a substitution. . . . Even if the petition is presented the day of the trial in a criminal case and if prejudice is alleged, so long as the trial judge had heard no matters pertaining to the merits nor indicated his views thereon, the petition for a substitution is filed within the boundaries of the statutes and in apt time. . . . And even if the prejudice of the judge came to defendant's knowledge on the day of trial his petition presented at that time is valid. . . . An improper denial of a petition for substitution of judge constitutes reversible error."

Also, People v. Ethridge, 78 Ill App2d 299, 223 NE2d 437 (1966), where the court discussed section 114–5(c) and said (p 303):

> "However, it is not necessary that a defendant enumerate facts to support a general allegation of prejudice . . . ; this can be reserved for the hearing which the court must conduct."

And on page 304:

> "We must conclude from the order that no testimony was heard or evidence received and that the denial of the motion was based on the arguments of counsel. If the defendant was unwilling or unable to support his charge of prejudice the order or the record should so indicate. Since the defendant was not accorded a hearing within the meaning of the statute,

the defendant's sworn allegation that he could not receive a fair and impartial trial must be taken as true. . . . The petition for substitution of judges was, therefore, improperly denied and all the actions of the court subsequent thereto are void."

On this point the State argues that the March 3, 1966, proceedings substantiate the denial of the motions for substitution of judge. At that time defense counsel referred to indictments 66–570 and 66–571 and said, "However, before I file the petition, I would like to know what the State intends to do with indictment 65–3490, 91 and 92, which are still pending before your Honor at this time . . . ." Following this request the State nolle prossed indictments 65–3490 and 91, leaving 65–3492 remaining from the original set of indictments.

From the foregoing the State argues, "Thus, the cause from the first set of indictments dating back to December 20, 1965 was still alive and this was the basis for the fixing of venue as it existed at the moment. To summarize, it may be said that the only real change in the charges was from attempted robbery to conspiracy. This is due to the fact that indictment 66–570 contained the identical charge and language of 65–3491 which it replaced. . . . It must be remembered that both sets of indictments grew out of the same factual circumstances."

The record shows extended discussion between court and counsel before the court ruled on the March 3, 1966 petitions for the substitution of judge. In ruling, the court said, "I think these indictments grow out of the same circumstances. And you have already had a conference with the Court. The picture is altered by these circumstances. After these circumstances happen, why, always, in the past, it has been the practice of some lawyers to go shopping, so to speak, by getting into another court. And I think that is why this rule was promulgated. And this is a reindictment based upon the same circumstances. You have had a change from Judge

94

Wells under the ten-day rule and then you have had conferences here. And now the fact they were reindicted under the same circumstances and the other cases were nollied, I think it is proper to keep these defendants before this Court. And I will deny your motion."

Authorities cited by the State include People v. Chambers, 9 Ill2d 83, 136 NE2d 812 (1956), where it is said (p 89):

> "[W]here the court has already commenced a hearing and has by his rulings indicated his views on the merits of the cause, it is too late for the party against whom such rulings have been made to move for a change of venue."

And People v. Lawrence, 29 Ill2d 426, 194 NE2d 337 (1963), where it is said (p 428):

> "We concur with the trial court that the request for a conference was in the nature of a preliminary motion treating to a degree on the merits of the case and designed to elicit the judge's views with respect thereto. Having sought and obtained those views, the petition came too late. Were we to hold otherwise, a petition for a change of venue could, in effect, be used as a vehicle to permit a defendant to 'shop' among the judges of a court for the one most leniently disposed to a plea of guilty."

 We conclude the new indictments did not constitute a new cause of action. In substance they were based on the same factual circumstances of a pending cause of action, of which they became a part and subject to its posture at that time. See People v. Doss, 382 Ill 307, 311, 46 NE2d 984 (1943). As the defendants had been accorded on December 27, 1965, the mandatory substitution of judge, to which they were entitled by subsections (a) and (b) of section 114-5, they were not

entitled to any further relief under those subsections on March 3, 1966.

As it is undisputed that "conferences" had been had with Judge Friedlund on the original indictments, in which, as his remarks clearly indicated, his views on the merits of the cause had been elicited, the defendants were not entitled to any relief under subsection (c) of the statute because, as stated in People v. Lawrence, supra, the petitions "came too late." In view of our conclusions, discussion or disposition is unnecessary of points made by defendants to show prejudice under subsection (c). We hold that the March 3 petitions for substitution of judge were properly denied.

Considered next is the contention of defendant Savage that his arrest was unlawful and the search illegal. This contention is based upon chapter 38, § 107–2. There it is said that a peace officer may arrest without a warrant when "(c) He has reasonable grounds to believe that the person is committing or has committed an offense." Defendant Savage argues that the police officers arrested him on mere suspicion based on whatever Rife told them, and "mere suspicion does not constitute reasonable grounds." (Brinegar v. United States, 338 US 160 (1949).) Defendant states, "The simplest inquiry of Rife would have shown the officers that his grounds were untrustworthy."

A review of defendant's authorities on this point is not required. The situation which confronted the officers when they were stopped by Rife comes within pronouncements made in People v. Tadlock, 59 Ill App2d 481, 208 NE2d 100 (1965), where it is said (p 486):

> "It has been stated on numerous occasions that the constitution prohibits only unreasonable searches, and permits those that are reasonable. The critical issue in each case is whether the situation confronting the officer justified the search. The legality of a search is to be determined not by its results,

but by the standard of reasonableness of the conduct of the officers in light of all the circumstances. 'Police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' People v. Watkins, 19 Ill2d 11, 19, 166 NE2d 433."

In our opinion, the circumstances under which the officer acted here were sufficient reasonable grounds to arrest defendant Savage. As to the seizure of his revolver, the facts here come within People v. McCracken, 30 Ill2d 425, 197 NE2d 35 (1964), where it is said (p 429):

"We have held that a search implies a prying into hidden places for that which is not open to view; and that a search implies an invasion and quest with some sort of force, either actual or constructive. . . . Where, as here, the articles are in plain and open view and observed by police officers under suspicious circumstances, it is not a 'search' nor an unreasonable seizure for the officers to make a reasonable investigation hereof. . . . Moreover, when defendant willingly handed over the articles to the officer at his request this action implied consent to the examination. . . . Hence, defendant cannot now complain that the articles which he carried in open view and willingly handed over were taken by an unreasonable search and seizure."

Defendant Savage cannot now complain that the revolver which he abandoned in open view was taken by "an unreasonable search and seizure."

Considered next is the contention of defendant Savage that he was denied his Sixth Amendment right to be represented by competent counsel. At the trial level Savage was represented by the Public Defender. The

record shows that at the March 3, 1966, hearing of the petition for substitution of judge defendant Savage informed the court that he wanted a "Bar Association lawyer." At that time and after he was sworn, defendant Savage stated, "Well, Miller pleaded guilty to two charges that I know for one that he wasn't guilty of. And this will, in turn, send me to the penitentiary, his statement, just his statement; his plea of guilty involves me in a conspiracy. Now, the attempted robbery was nolle prossed. . . . [T]here is no one that ever said we attempted to rob any place except Miller. And I was indicted for this." As to the Public Defender, Savage said, "I don't say he was incompetent, but I was asked to plead guilty to these three, four indictments. And I don't think this proves to me that my counselor is entirely in my favor." After asking the Public Defender if he was prepared to defend Savage, the court stated to Savage, "As long as you are indigent, the Public Defender will continue to represent you until there is some showing that he is not competent to represent you. And I don't think that your representation here shows any incompetence on his part. . . . I know that the lawyer has had a conference with the Judge and he has probably had a conference with you. And what transpired is really no business of the Court as long as he is doing his job diligently and according to the law, which he seems to be doing."

On the point of incompetence of counsel, defendant Savage argues that he elected to be tried by the jury and Crable elected to be tried by the judge. As both cases were tried simultaneously, "this situation could cause confusion in the introduction of evidence, since the applicable standards are quite different in jury trials and nonjury trials." Savage also states that he was charged with an additional crime carrying a much more severe penalty than Crable.

In addition to the foregoing points, defendant Savage relates criminal statistics for Cook County, which indicate that 55% of the defendants are indigent and in 1964 the Public Defender disposed of the indictments of 1,954 defendants or 48%. From these statistics Savage stated, "Our fourth point is simply that these rough statistics show that the Public Defender's Office is overworked. . . . For these reasons, the court abused its discretion in not appointing a Bar Association lawyer to defend Savage as he had requested."

In People v. Gray, 33 Ill2d 349, 211 NE2d 369 (1965), it is said (p 355):

> "The question of competency of counsel is one of fact and cannot be based solely upon assertions . . . .

> "Moreover, it is well settled that '[t]o warrant a reversal because of incompetency of counsel, the record must clearly establish not only that counsel performed his trial duties in an incompetent manner, but also that defendant was substantially prejudiced thereby.'"

■ After an examination of the transcript of the testimony in the trial proceedings, it is our observation that defendant Savage was ably represented through the trial. The Assistant Public Defender, Cornelius Toole, diligently presented objections on behalf of defendant Savage and extensively cross-examined Rife and the other witnesses for the State. As Savage was tried by a jury, we find no merit to his contention that he was prejudiced by the plea of guilty of codefendant Miller or the suggestion by the Public Defender that he (Savage) also plead guilty. Miller did not testify at the trial. It is a matter of defense strategy for defendant's counsel to suggest that he plead guilty provided it is not used as a means to force a guilty plea which would not have been made otherwise. From the record it does not ap-

99

pear that defendant Savage was prejudiced on either of these points. We find no error here.

Considered finally is defendant's contention that there was insufficient proof of his prior conviction of a felony. Chapter 38, section 24–1(b) of Ill Rev Stats 1965, dealing with the penalty for unlawful use of weapons, provides:

> ". . . A person convicted of a felony under the laws of this or any other jurisdiction, who, within 5 years of release from penitentiary or within 5 years of conviction if penitentiary sentence has not been imposed, violates any Subsection of this Section shall be imprisoned in the penitentiary from one to 10 years."

Defendant argues that no proof was ever offered at his trial other than the indictment itself, and "proof of defendant Savage's prior conviction required a filing of the authenticated record of the prior conviction with further adequate proof to prove beyond a reasonable doubt that this was the same individual named in the record." Defendant's authorities include People v. Stewart, 23 Ill2d 161, 177 NE2d 237 (1961), and People v. Hornstein, 47 Ill App2d 367, 198 NE2d 207 (1964), which, because of factual differences, we do not consider controlling here.

The record shows that because of the objections of defendant's counsel that it was "highly prejudicial" and "contrary to the spirit of the law," Count 2 of indictment 66–570, which set forth a prior conviction of Savage for robbery (Indictment 62–2529), was not read to the jury. Also, the offer in evidence by the State of a certified copy of the record of that conviction was denied during the trial and deferred until after the verdict of the jury. The court ruled that the prior conviction pertained to "penalty," and it was not "within the province of the jury to consider for any reason whatsoever."

After the guilty verdict was returned and during the pre-sentence hearing on aggravation and mitigation, the State reviewed defendant's record and included the details of the prior conviction (62–2529), to which defendant made no objection.

■■■■■ We agree with the State that defendant may not ask the court to proceed in a given manner and "then assign as error in a court of review the ruling or action which he procured." (People v. Ficarrotta, 385 Ill 108, 110, 52 NE2d 165 (1943).) Also, we find no prejudicial error in the manner the prior conviction was handled during the pre-sentencing hearing. In People v. Deweese, 27 Ill2d 332, 336, 189 NE2d 250 (1963), it is said that at a hearing in aggravation and mitigation, the "informal presentation of a defendant's former record is not erroneous," because the trial court is not "bound at such hearing by the usual rules of evidence." See, also, People v. Bradford, 23 Ill2d 30, 34, 177 NE 2d 139 (1961). We find that the course pursued by the trial court was proper under the circumstances shown by this record.

We conclude defendant was given a fair trial with the effective assistance of competent counsel. Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.