PIERCE, Judge.
Appellant Robert Cross appeals to this Court from separate judgments of conviction entered against him after adverse jury verdicts in the foregoing three cases, each charging grand larceny.
In appeal case No. 69-481 Cross was sharged with larceny of $200.00 on December 11, 1968, from John G. and Sevasti K. Karavas, d/b/a Carousel Gift Shop. In appeal case No. 69-482 he was charged with larceny of $327.05 on December 5, 1968, from John and Catherine Billiris, d/b/a Catherine’s Linen Shop. In appeal case No. 69-483, he was charged with larceny of $300.00 on December 31, 1968, from the Billirises d/b/a Catherine’s Linen Shop. The case involving Carousel Gift Shop was tried on June 20, 1969. The two cases involving Catherine’s Linen Shop were tried on June 30, 1969. Cross was convicted by jury verdicts in all three cases. Adjudication of guilt was withheld in all cases. Cross was released on probation for a period of three years. Cross has appealed each case separately to this Court but they have been consolidated for disposition here.
The facts developed at the trials are simple and without material conflict. Se-vasti Karavas and Catherine Billiris were sisters and, together with their husbands, each named John, owned and operated a gift shop and a linen shop respectively. The two shops were customers of Textile Prints of Florida, for which firm Cross was a travelling salesman.
On December 12, 1968, Mrs. Karavas, in payment of her account with Textile Prints, gave Cross a check payable to him in the sum of $200.00, which check Cross cashed at the First Bank of Gulfport the following day and pocketed the proceeds.
On December 5, 1968, Catherine Billiris gave Cross a check for $327.05 in payment for merchandise from Textile Prints. The check was written out by Cross and he made it payable to himself. On December 31, 1968, John Billiris gave Cross a check for $300.00 to apply on Billiris’ account with Textile Prints. The check was made in favor of Cross, who immediately cashed the check at a Gulfport bank and again pocketed the proceeds.
None of the checks or the proceeds thereof ever reached Textile Prints. Cross never told any of the shop owners he was going to cash the checks personally. On the contrary, all three checks were given to Cross with the express understanding that they were to be turned in to Textile Prints to apply on the shop owners’ accounts. The shop owners never received credit for any portion of the three checks.
Cross makes two contentions here for reversal: (1) that both of the shop-owning partners in each check transaction, instead of only one, should have testified in order to show non-consent of both partners in each instance, and (2) that under the facts in- evidence, ownership of the check proceeds should have been laid in Textile Prints rather than the shop owners. We disagree and affirm, but will briefly discuss each contention.
(1) Sufficiency of evidence as to non-consent of both partners in each transaction.
In appeal case No. 69-481 where ownership of the money was laid in John G. and Sevasti K. Karavas, only the wife, Sevasti K. Karavas, testified to the loss of the money and the non-consent to the taking. In appeal case No. 69-482 ownership and non-consent was laid in John and Catherine Billiris, but only John Billiris testified. In appeal case No. 69-483 ownership and non-consent was likewise laid in the two Billirises but only John Billiris testified.
*326 Cross contends that because only one of the co-owners of the respective businesses testified as to the loss in each transaction that the prosecution must fail because of the failure of the evidence to show non-consent of the co-owner in the respective transactions not testifying. This contention is untenable.
Cross relies upon Albritton v. State, 1921, 81 Fla. 684, 88 So. 623, a case decided 49 years ago. In Albritton, the larceny alleged was “of one cow, the property of” six named persons, all heirs of a prior decedent. Three of the heirs testified to non-consent of the taking of the cow and the other three heirs did not testify. The Supreme Court held that “the non-consent of the owner must be proved, as it cannot be presumed from the taking”. However, the opinion recites that “the cow alleged to have been stolen was one of a number of range cattle belonging to the Towles heirs named in the indictment, and it does not appear from the testimony that the stock of cattle was in the exclusive custody and control of any one of the owners, or of any other person”. Thus Albritton is clearly distinguishable. The property stolen was only alleged as “one cow, the property of” six named owners, as heirs of an estate, and the “cow” was only one “of a number of range cattle” in the herd belonging to all of them. It is thus obvious that Albritton, the sole defendant charged and convicted, could not have been protected against double jeopardy. No such facts exist in the case sub judice, nor facts analogous thereto. Here each case involves only one check and in each instance the check was signed only by the co-owner who testified. But even so the opinion in Albritton goes further and says that the non-consent of a co-owner “may be proved by circumstantial evidence, provided the circumstances are such as to exclude every reasonable presumption that the owner consented.” Thus it must be presumed, certainly in the absence of countervailing testimony to the contrary, that the absent co-owner here did not consent to the taking of the money.
It is true that in each of the transactions involved here the absent co-owner not only did not tesify, but it was not shown by the evidence adduced why he was not present — in other words, his absence was not explained — a fact which Albritton indicated was essential if he did not appear and testify. But the Supreme Court in Johnson v. State, 1946, 157 Fla. 328, 25 So.2d 801, overruled any such requirement, whether dicta in Albritton or not. In the Johnson case, the defendant, one Sparks Johnson, was convicted of larceny of “several cases of whisky” owned by one Davis and one Scott, who jointly operated a liquor package store. Only one of the owners testified to ownership of the whisky and non-consent to the taking. The holding in Al-britton, last adverted to, was relied upon on appeal to reverse the conviction. Discarding such contention, our Supreme Court in Johnson held (25 So.2d text 803):
“We are not disposed to apply in cases of this nature the rule evidently adopted in Albritton v. State, supra, that the state may resort to circumstantial evidence (in that case, larceny) only where the absence of the owner is ‘satisfactorily accounted for.’ Only one owner testified, and he was not asked whether appellant was given leave to enter the building. The record is silent as to the whereabouts of the other owner, but we think the testimony thoroughly convincing that no consent whatever was given.”
The Supreme Court later, in Hearn v. State, Fla.1951, 55 So.2d 559, further rationalized the holding in Johnson aforesaid, in the following language:
“Larceny is an offense against the public, that is against the State, and the offense is the same whether the property stolen belongs to one person or several persons jointly or to several persons each owning separate parts thereof. The names of the owners of the stolen prop-perty constitute no part of the offense. They are stated in the information prim *327 arily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused,” (Emphasis supplied).
See also Gaynor v. State, Fla.App.1967, 196 So.2d 19, wherein the above quoted excerpt from Hearn was relied upon by the 4th District Court to affirm a conviction for larceny of some television sets.
There is no merit to the contention made under this point.
(2) Under the facts shown to exist here was it fatal to lay ownership of the money stolen by Cross in the shop owners who gave him the three checks rather than in his employer, Textile Prints?
One of the informations alleged ownership of the money represented by the check to be in John G. Karavas and Sevasti K. Karavas. The other two informations alleged respectively ownership of the money represented by the checks to be in John Billiris and Catherine Billiris. Cross contends here that ownership of the checks or proceeds thereof should have been laid in the name of Textile Prints of Florida, Inc., because the checks were given to be applied on the accounts of the shop owner with Textile Prints. This contention .is not tenable.
The record does indicate that Cross was having a dispute with Textile Prints over certain commissions due Cross. However, the testimony showed clearly that in each instance the individual checks were given by the shop owners to Cross, and were so accepted by Cross, with the distinct understanding and instruction that the checks were to be turned over to Textile Prints to be applied upon their respective accounts. Instead Cross took the checks to the-bank, cashed them, and appropriated the money to his own use. He did not report to Textile Prints his receipt either of the checks or the proceeds thereof. Nor did he advise any of the shop owners he had personally cashed their checks. It was only when they subsequently received their respective statements of account from Textile Prints that they learned their checks had been cashed and diverted by Cross to his own use.
The former highly technical requirement that ownership of property allegedly stolen or unlawfully hypothecated must be alleged with specific particularly has been considerably watered down by the enactment by the Legislatures of 1951 and 1957 of Chapters 26912 and 57-344 respectively, which have now been brought down as F.S. § 811.021, F.S.A. As said by this 2nd District Court in Casso v. State, Fla.App.1966, 182 So.2d 252: “[a]ll former distinctions between larceny, embezzlement, and obtaining money or other property by false representations, have been abolished by statute and are now merged into the one offense of larency”, citing F.S. § 811.021, F.S.A. That statute is a comprehensive one, covering the whole field of the criminal taking of personal property of another. One portion of F.S. § 811.021, F.S.A. would read inter alia as follows:
“A person who, with intent to deprive * * * the true owner of his property or of the use and benefit thereof, or to appropriate the same to the use of the taker * * * j * * * having in his possession * * * as * * * agent * * * of any person * * *, or as a person authorized by agreement * * * to * * * take such possession [of] any money * * * or article of value of any kind, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof; * * * steals such property, and is guilty of larceny.

It shall be sufficient for any * * * information * * * filed * * * under this section to charge generally that the defendant at the time and in the county specified, did steal the per *328 sonal property * * * out of which the prosecution arose, describing the same in general terms and alleging generally the ownership and value thereof.”
Under said F.S. § 811.021, F.S.A. it seems sufficient now in charging larceny to allege in the information the time and place where the offense occurred, the ownership and the value involved, and that these elements may be alleged in general terms. Actually, under the present statute the main purpose of such elements being alleged is to provide minimal requirements to protect an accused from being prosecuted again for the same offense. The requirement for “alleging generally the ownership” of the property stolen is, as stated in Hearn and Gaynor, “primarily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused”.
Applying the foregoing rationale to the informations and facts in issue in the three cases involved here, we find that Cross is amply protected from double jeopardy. The respective dates when the checks were given is stated with definiteness, the amounts involved in each transaction is clearly fixed, and it conclusively appears that the respective larcenies arose out of transactions between Cross on the one hand and the Billirises and Karavases on the other.
Lastly, even if the old distinction between larceny and embezzlement existed with respect to the time the intent was formed to unlawfully convert the property to the possession of the accused, the verdicts should still be upheld. This is so because such issue, under the facts of the instant cases, would have been a question for the jury in each instance. Murray v. State, 1927, 93 Fla. 706, 112 So. 575.
The three judgments of conviction are severally affirmed.
HOBSON, C. J., concurs.
McNULTY, J., dissents with opinion.