## No. 23419.

JAMES STANDISH WHITE *v.* THE PEOPLE OF THE STATE OF COLORADO.

(472 P.2d 674)

Decided July 13, 1970. Opinion modified and as modified rehearing denied July 27, 1970.

ROBERT BUGDANOWITZ, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE,

Deputy, JAMES F. PAMP, Assistant, AUREL KELLY, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

DEFENDANT White, charged in an information with two counts of burglary and conspiracy to commit burglary, was convicted by a jury and given concurrent sentences.

White sets forth two arguments in seeking a reversal of his conviction which we will discuss. A third, concerning instructions, to which no objection was made and concerning which no error was cited in the motion for new trial, requires no comment.

We affirm the judgment of conviction for the reasons hereinafter discussed.

The facts surrounding White's arrest and the charges against him are as follows: At 3 o'clock in the morning police officers, either alerted by a silent burglar alarm or cruising in the area, observed the activities of White and a codefendant with whom he was charged in the conspiracy count. White was first seen at the front door making hand movements at the doorjams. Then he was seen in the alley at the side of the building going toward the rear, and then at the rear of the building moving about. Noises were heard emanating from the direction where White was, and then White's companion was seen coming out of the rear door of the building. Both were arrested on the spot. Screwdrivers were found on the persons of each of them.

Police officers examined the back doors of the establishment. On one door the screen had been cut and there were scuff marks on the woodwork. On another door the locks had been broken and were laying on the floor—this was the door through which White's codefendant was seen exiting. Examination of the front door revealed other scuff marks.

The owner of the establishment was called to the scene by the police officers. He stated to the officers at the scene and in testimony on the witness stand that the doors prior to the alleged burglary were unmarked; that the locks were secure and not broken; nor were they on the floor when he left the store for the night. The owner further testified that the cash register drawer, usually left slightly ajar, was pulled all the way open and that some pewter objects on a rear shelf were disarranged.

I.

Defendant first contends that he was entitled to a directed verdict of acquittal on the burglary count because want of consent or lack of permission to be on the premises by the owner thereof was not proven by the prosecution. He asserts that consent was raised by his general plea of not guilty and the burden was on the People to prove each and every element of the offense, including the trespass, or, more particularly, lack of the owner's consent for White to be where he was. The owner of the premises was a witness for the prosecution and testified concerning the condition of his store before and after the alleged break-in but was not asked the direct question as to whether he had given his consent for them to be in or about the premises.

Beyond doubt it would have been a simple matter for the prosecution to ask the owner of the establishment whether he had given his permission to the defendant to be on his premises, but we do not agree that the failure to do so constitutes a lack of proof of the crime alleged.

Defendant relies on cases primarily from the Court of Criminal Appeals of Texas which has held in a number of decisions that when the owner of premises alleged to have been burglarized is a witness and fails to give direct and positive testimony of his want of consent such lack of consent will not be inferred from other circumstances in the evidence. *See, e.g., Caddell v. State,* 49 Tex. Cr. R.

274

133, 90 S.W. 1013. *See also State v. Slade,* 78 N.M. 581, 434 P.2d 700.

 We reject the reasoning of those cases as being highly technical, without good logic, and contrary to the general rule that proof of material allegations of an offense may be made by circumstantial evidence. We adopt the majority rule in the United States that want of consent by the owner to enter into his premises may be proved by circumstantial evidence. *Davis v. State,* 44 Ala. App. 284, 207 So.2d 649; *Johnson v. State,* 157 Fla. 328, 25 So.2d 801; *People v. McCracken,* 30 Ill.2d 425, 197 N.E.2d 35; *State v. Patchen,* 36 Nev. 510, 137 P. 406; *State v. Spaise,* 250 Or. 354, 442 P.2d 611.

Every circumstance of the case at bar negates every inference of consent by the owner. It was 3 a.m.; defendant and his companion were under constant surveillance; they were first at the front door and then at the back door. The jimmy marks, the cutting of the screen, the broken locks, the apparent rifling of the cash register, the disturbance of the merchandise were sufficient for the jury to infer that the presence of White at the time and place was not by invitation or consent. Additionally, the testimony of the owner concerning the altered condition of the premises and his viewing the suspects in the police car, apparently without any recognition of them, negated consent.

II.

Defendant next argues that the court erred in failing to dismiss count 1 of the information for the reason that the count is fatally defective. The charge stated:

"* * * White did then and there feloniously, wilfully and maliciously break and enter, and without force enter, the building of * * * with the intent then and there to commit the *crime of theft;* * * *." (Emphasis added.)

It is White's contention that the charge was in violation of his constitutional rights in that it did not properly or sufficiently advise him of the charge against him.

Prior to the 1967 Session Laws the various felonies of

larceny, embezzlement and the like were separately defined throughout the criminal statutes. The 1967 legislature consolidated these formerly separately defined crimes under one broad, enumerated crime designated as theft:

"40-5-2. Theft. — (1) (a) Any person commits theft when he knowingly:

"(b) (i) Obtains or exerts unauthorized control over anything of value of another; or

"(ii) Obtains by deception control over anything of value of another; or

"(iii) Obtains by threat control over anything of value of another; or

"(iv) Obtains control over any stolen thing of value knowing the thing of value to have been stolen by another; and

"(c) (i) Intends to deprive another permanently of the use or benefit of the thing of value; or

"(ii) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive another permanently of such use or benefit; or

"(iii) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive another permanently of such use or benefit.

"(2) (a) Any person who commits theft where the value of the thing involved does not exceed one hundred dollars, and any person who commits theft twice or more within a period of six months and from the same person where the aggregate value of the things involved does not exceed one hundred dollars, is guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than three hundred dollars, or by imprisonment in the county jail not to exceed six months, or by both such fine and imprisonment.

"(b) Any person who commits theft where the value of the thing involved exceeds one hundred dollars, and any person who commits theft twice or more within a period of six months from the same person and has not

been placed in jeopardy for the prior offense, where the aggregate value of the things involved exceeds one hundred dollars, is guilty of a felony and, upon conviction, shall be punished by imprisonment in the state penitentiary for not less than one year nor more than ten years.

"(3) In every indictment or information charging a violation of this section, it shall be sufficient to allege that, on or about a day certain, the defendant committed the crime of theft by unlawfully taking a thing or things of value of a person or persons named in the indictment or information.

"(4) Wherever any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence game, or shoplifting, said law shall be interpreted as if the word 'theft' were substituted therefor; and in the enactment of this section, it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes."

White contends that he could not possibly know what evidence to meet unless he is informed as to which subsection of the crime of theft he is charged with and whether he is charged with a felony or misdemeanor.

While the theft statute covers several crimes, it is clear under the circumstances of this case that only subsection (b) (i) applies. The other subsections define crimes similar to the former crimes of embezzlement, larceny by bailee, extortion, receiving stolen goods, criminal conversion, and other crimes not applicable to the circumstances here. Also the legislature authorizes the use of the term "theft" in an information and that "theft" is to be substituted for "larceny" wherever, as in C.R.S. 40-3-5, as amended, it appears in a law of this state. Under C.R.S. 40-5-2, as amended, theft is a specific crime. Burglary cases cited by defendant in which the

information charged merely the "intent to commit a crime" are thus not applicable to the case at bar.

We additionally note that defendant's counsel — not the same attorney who represents the defendant in this writ of error — did not move for bill of particulars available to him under Crim. P. 7 (f). For the effect of not availing oneself of the rule, see our discussion in *Mora v. People*, 172 Colo. 261, 472 P.2d 142.

The judgment is affirmed.

MR. JUSTICE HODGES, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.