No. 22781.

STANLEY D. WOODMAN *v*. THE PEOPLE OF THE STATE OF COLORADO.
(450 P.2d 330)

Decided February 3, 1969. Rehearing denied February 24, 1969.

Douglas G. McKinnon, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Robert L. Hoecker, Assistant, for defendant in error.

*En Banc.*

Mr. Chief Justice McWilliams delivered the opinion of the Court.

Stanley D. Woodman, hereinafter referred to as the defendant, was convicted of the crime commonly referred to as obtaining money under false pretense (C.R.S. 1963, 40-14-2) and as a result of his conviction the defendant was thereafter sentenced to a term in the State Penitentiary. By writ of error the defendant now seeks reversal of the judgment and sentence thus entered.

The criminal charge filed against the defendant arose out of a construction contract between one Anderson,

the buyer, and the defendant, as the builder and seller, the defendant signing the contract, however, on behalf of Stanwood Homes, Inc. The gist of the rather detailed allegations contained in the criminal information is that when the house had been completed and the contract between the parties was about to be carried through to its culmination, *i.e.,* Anderson was to pay defendant the balance then due on the total contract price and in return therefor the defendant was to deliver to Anderson a warranty deed to the premises on which the house had been constructed, the defendant falsely and fraudulently represented that "there were no claims against the same [*i.e.,* the dwelling and garage which defendant had constructed for Anderson] and that no contract of any kind had been made nor anything done, suffered or permitted in relation to said property in consequence of which any lien might be claimed or enforced against said land or property. . . ." The truth of the matter, according to the information, is that when the defendant made the representations above referred to there were outstanding claims against the property in question and "contracts had been consummated and work had been performed by sub-contractors" who subsequently did in fact file liens totaling some $8,500 against the Anderson property. The information also contained the averments that the defendant knew his representations were false; that they were made with the intent that Anderson rely on them; and that in reliance upon defendant's false and fraudulent representations Anderson gave defendant $7,870.53, plus a promissory note in the amount of $4,300.

Upon trial Anderson testified that making certain there were no outstanding claims by sub-contractors or materialmen against the property before he paid the balance due on the contract was to him a very important matter. Anderson went on to testify that he initially indicated to the defendant that he (Anderson) desired lien waivers from all sub-contractors and materialmen. In response

to this request the defendant stated, according to Anderson, that lien waivers from all sub-contractors "would merely delay the closing; that (Anderson) had no need to worry about that; that he (the defendant) was a gentleman and his word was his bond and that he couldn't remain in business if people couldn't trust him."

Anderson apparently was not content to let the matter rest on defendant's claim that he was a gentleman. In any event, Anderson later demanded and received from the defendant a form of lien statement, signed by the defendant under oath. In that statement the defendant declared that as concerns the property here in question "there are no claims or mechanics' liens against the same and that no contract of any kind has been made nor anything done, suffered or permitted in relation to said land or any building thereon or improvement thereof in consequence of which any lien may be claimed or enforced against said land under the mechanic's lien laws of this state . . . and further the deponent sayeth not."

Apparently this written assurance, under oath, satisfied Anderson. In any event, he testified that in reliance upon the representations thus made to him by the defendant he in turn endorsed over to the defendant a check in the amount of $7,870.53 given him by his lending agency, together with a personal check in the amount of $602. Additionally, on this occasion Anderson also delivered to the defendant a promissory note in the amount of $4,300.

As concerns the promissory note, Anderson testified that several days later the defendant returned and stated that because he needed cash to buy some building sites, he would discount the note at a saving to Anderson. Anderson thereupon borrowed more money and bought back the note which he had just given defendant. And that was about the last time Anderson saw the defendant, for the time being at least. It was at this juncture that the defendant suddenly left the Colorado Springs

area, for parts unknown. Anderson testified that he learned of defendant's sudden departure when he thereafter tried to contact defendant in connection with the batch of lien statements which were then being served on him.

As concerns lien statements, the evidence was that very shortly after Anderson paid defendant the balance due on the contract he was served with a considerable number of such statements. According to the record, some eighteen lien statements were thereafter filed with the County Clerk for El Paso County, the statements representing claims of approximately $10,000 against the property which Anderson had just acquired by warranty deed from the then missing defendant.

Upon trial the defendant determined to exercise one of his constitutional rights and he declined to testify in his own behalf. And the only testimony offered by way of defense came from one of defendant's counsel, who took the stand and attempted to impeach Anderson's testimony by offering his version of a conversation he had with Anderson.

At the conclusion of the People's case, and again at the conclusion of all the evidence, defendant moved for a directed verdict of not guilty. These motions were both denied, and they now form the basis for defendant's main contention in this court, namely, that the evidence is legally insufficient to sustain the jury's verdict. With this contention we do not agree.

It is seriously argued here, as it was in the trial court, that there is no evidence that the defendant was the "Stanley D. Woodman" named as defendant in the criminal information. Our study of the record, however, convinces us that there is ample evidence that, insofar as the question of identity is concerned, this defendant and the "Stanley D. Woodman" named in the information are one and the same person. See *Osborn v. People*, 83 Colo. 4, 262 P. 892.

Similarly, it is also argued by counsel that inas-

much as the original construction contract was signed by the defendant on behalf of "Stanwood Homes, Inc.," a corporation, such fact somehow constitutes a complete defense to the criminal charge. We frankly cannot follow this reasoning. The corporation was not charged with any criminal act, but the defendant as an individual was, and if the evidence is legally sufficient to support the verdict of the jury that the defendant did in fact obtain money from Anderson by false pretenses, it is of no significance that the contract between the parties was signed by the defendant on behalf of a corporation.

One argument advanced in behalf of the defendant merits discussion. It is suggested that the People's evidence fails to establish, even prima facie, that as of the date of the defendant's representations there were in fact *any* outstanding claims against the subject property. As above indicated, the testimony of the witness from the office of the county clerk established the various liens which were filed against the property in question, although admittedly none were of record as of the date the defendant made his representations to Anderson. However, Anderson, who moved into the house as soon as he received the warranty deed from the defendant, testified as to certain claims which were thereafter asserted against him and his house. One such claim was for a tap and meter charge and he testified that he paid this claim for $235 to forestall the cutting off of his water supply.

In this particular connection the People also called as a witness one Williams, who testified that he installed the flooring in the Anderson house at the request of the defendant and that he was not paid for his services. As a result of his unpaid claim Williams in time caused a statement of lien to be filed against the Anderson property. And it was Williams' testimony that he had completed his service some time *prior* to the date of the defendant's representations to Anderson that there were no outstanding claims against the property.

Actually, in our view, it could be *reasonably* inferred from a consideration of the entire record that *all* of the claims giving rise to the filing of lien statements totaling some $10,000 were in existence and known to the defendant when he, in writing and under oath, declared that there were no claims against the property and that "no contract of any kind" had been made upon which a lien could be "claimed or enforced." However, reliance need not be placed on what we think would be a very reasonable inference, since there was affirmative testimony as concerns this particular matter from the witness Williams. The question is not *how many* outstanding and unpaid claims there were against the property at the time when the defendant represented there were *none,* but whether there were *any* such outstanding claims. And the record in our view establishes that there were such.

█ As concerns the general sufficiency of the evidence, then, in our considered judgment the record does support the verdict of the jury. The gist of the offense is obtaining money by means of a false pretense with the intent to cheat and defraud the person from whom it is obtained. *Clarke v. People,* 64 Colo 164, 171 P. 69. The facts of the instant case would appear to clearly come within the statutory definition of the crime with which the defendant stood charged. C.R.S. 1963, 40-14-2. Indeed, the instant case would seem to be a classic example of obtaining money by false pretense.

█ Complaint is also made that the trial court committed prejudicial error in receiving into evidence People's exhibits B and C, which were the warranty deed and the lien statement, both signed by defendant. It is claimed that the warranty deed was not material to the issues at hand, and that the lien statement, though signed by the defendant obtensibly under oath, was inadmissible because the notary was not called to verify that the defendant was in fact placed under oath. These arguments are both devoid of merit. The warranty deed was signed by the defendant, in his individual capacity

incidentally, and in that instrument he declared that he "warrants the title" except as to certain taxes. Most certainly the deed, though not itself the basis for the charge of false pretense, did constitute "material" evidence.

 As concerns the fact that the notary did not testify as to the circumstances under which the lien statement was made by the defendant, it is sufficient to note that Anderson and a bank official did testify about the execution of this statement. And it is of course not essential that the false pretense in a criminal prosecution be one which is made under oath. In fact, it need not even be in writing. *Stumpff v. People*, 51 Colo. 202, 117 P. 134.

 Finally, it is urged that the judgment must be reversed because of the fact that the trial court gave, over objection, instructions No. 8 and 9 and for the further reason that the trial court refused to give defendant's tendered instructions No. 1 through 12. Instruction No. 9 concerning the right to rely on "previously made" representations is by no means a model instruction. It would appear to be couched in language appearing in *Clarke v. People, supra.* Language taken from a judicial opinion and divorced from its original context is not always appropriate for instructions to a jury. *Mendez v. Pavich*, 159 Colo. 409, 412 P.2d 223. However, we see no prejudicial error in the giving of instruction No. 9. It concerned only a very minor aspect of the controversy and under the circumstances of this case could not have misled the jury.

 Instruction No. 8, which is important, sets forth the several material allegations of the information and, save for two particulars, was identical with the instruction tendered by the defendant on this subject. As a matter of fact the trial court acquiesced in one of defendant's suggestions and by interlineation altered the instruction to meet defendant's objection. In our view,

the instructions which were given the jury adequately and correctly instructed the jury on the law of the case. Nor do we perceive any error in the trial court's denial of the twelve instructions tendered by the defendant. Throughout the trial the defendant attempted by one means or another to inject into the proceedings the mechanic's lien law of the state. And this attempt was manifested in certain of the tendered instructions. For example, one tendered instruction, which was refused by the trial court, would have instructed the jury that Anderson, the victim, was "presumed to know the mechanic's lien law of the State of Colorado." It is doubtful whether this presumption could be indulged in as concerns the legal profession, let alone the general public. Suffice it to say, we find no error in the refusal of the trial court to submit instructions of this type to the jury.

The judgment is affirmed.