### No. 27180

### The People of the State of Colorado v. Lennox Byron Treat

(568 P.2d 473)

Decided September 6, 1977.

Nolan L. Brown, District Attorney, T. W. Norman, Deputy, for plaintiff-appellant.

Rogers, Dickerson and Kottke, Richard W. Dickerson, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The defendant Treat was the general manager and moving force behind Treat Recreational Vehicle Center (the Center), a now defunct corporation which sold and leased recreational vehicles. Although Treat's salary was $1,800 per month, during a ten-month period he received over $36,000 from the Center — $18,000 more than his salary. He left the state, but was eventually apprehended in Kansas City and charged with five counts of felony theft (section 18-4-401, C.R.S. 1973) and one count of failure to deliver title (section 42-6-109, C.R.S. 1973). After a lengthy preliminary hearing, the trial court dismissed all counts against Treat. The District Attorney appeals. We affirm in part and reverse in part.

We emphasize at the outset that the issue here is whether dismissal of the charges after a *preliminary hearing* was proper. The preliminary hearing is a screening device, designed to determine whether probable cause exists to support charges that an accused person committed a particular crime or crimes. *Maestas v. District Court*, 189 Colo. 443, 541 P.2d 889 (1975); Crim. P. 7(h). The evidence presented must be viewed in a light most favorable to the prosecution; evidence sufficient to support a conviction is not necessary at this stage of the proceedings. *See Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265 (1975); *People v.*

*District Court*, 186 Colo. 136, 526 P.2d 289 (1974).

■ Therefore, our present task is to determine, as to each crime charged, whether the evidence adduced at the preliminary hearing was sufficient to support a finding of probable cause. The probable cause standard requires evidence sufficient to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that the defendant may have committed the crimes charged. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973); *cf. Glass v. People*, 177 Colo. 267, 493 P.2d 1347 (1972) (Probable cause to arrest). Because the six counts against Treat arose from four separate transactions, we shall consider each transaction separately.

I.

Two counts of felony theft and the count of failure to deliver title arose out of the sale of a trailer owned by Delbert Withers. Treat had suggested to Withers that the Center offer the trailer for sale on a consignment basis. Both parties agreed that $4,500 would be a fair price and that Withers would receive that full amount, the Center to receive any excess of the price for which it could sell the trailer over $4,500. McGinley, an employee of the Center, drafted a contract to that effect which was signed by Withers and McGinley.

Kayton, a prospective buyer, offered $5,100 for the trailer. McGinley, acting under Treat's instructions, told Withers that he had a buyer willing to pay only $4,450 and that the Center would require $150 more for its services in making the sale. (This scheme was known as the "grind.") Withers then agreed to reduce his share to $4,300.

Kayton paid for and took possession of the trailer, but Withers was not paid by the Center, and therefore retained the certificate of title. When Withers threatened a civil action for the amount due, Treat signed a bank draft to him, but it was dishonored. When Withers called to demand his money, Treat directed McGinley to stall Withers and reassure him that payment was forthcoming.

Based on this evidence Treat was charged with one count of unlawfully taking Withers' trailer, a second count of unlawfully taking Kayton's money, and a third count of failing to deliver the trailer's title to Kayton. The dismissal of Count Three is apparently not contested; we shall discuss the first two counts in order.

A. *Count One*

Colorado's theft statute, section 18-4-401, C.R.S. 1973, provides in pertinent part:

"(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception . . ., and:

"(a) *Intends* to deprive the other person permanently of the use or benefit of the thing of value; or

"(b) *Knowingly* uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or
"(c) Uses, conceals, or abandons the thing of value *intending* that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit. . . ." (Emphasis added.)

Thus, for our purposes here, the requisite elements are knowing control, either without authorization or by threat or deception, and one of the three types of intent. We emphasize this point because the record indicates that the trial court may have overlooked or ignored paragraph (1)(b), which provides that a sufficient intent is established if the prosecution proves a *knowing use* inconsistent with the owner's permanent use and benefit. A specific intent to deprive is only one of three alternative intents established by the statute, and is not essential in every case.

The trial court dismissed Count One because it found that Treat's control over Withers' trailer was authorized, that no threats or deception were shown, and, therefore, that there was not probable cause to believe that Treat had committed a theft. We disagree.

Treat's initial control over the trailer clearly was authorized. However, the record contains ample evidence from which a jury could reasonably infer that his *exercise* of that control *continued* to be authorized only because he deceived Withers into believing that a legitimate sale was being consummated and that Withers would receive his money. Whether or not control was retained only by deception is, of course, a fact question, but such a fact finding could be supported by the evidence presented at the preliminary hearing. That control need not be unauthorized from the outset is made clear by the language of section 18-4-401. *See also Poe v. People*, 163 Colo. 20, 428 P.2d 77 (1967); *McGuire v. People*, 83 Colo. 154, 262 P. 1015 (1928).

There also remains the fact question whether Treat intended to deprive Withers of his trailer permanently, or knowingly used the trailer in such manner as to deprive Withers of it, but we cannot say that the evidence presented at the preliminary hearing could not support a factfinder's reasonable belief that Treat had the requisite intent. Such an intent could be inferred, for example, from Treat's use of the "stall" to put Withers off until Treat could leave the state, or from his payment with a worthless bank draft. *See Compton v. People*, 89 Colo. 407, 3 P.2d 418 (1931). At the preliminary hearing stage, all that is required is evidence sufficient to justify a reasonable jury or judge trying the facts in finding each element of the crime charged.

It is not cause for dismissal of any of the theft charges that Treat may not have participated directly in every act constituting the thefts. There is ample evidence in the record — including Treat's own statement — that Treat was the "moving force" behind the actions of the Center and its employees. Specifically, regarding Count One, testimony indicated that

the "grind" scheme was Treat's idea. And when Withers sought payment it was Treat who expressly ordered that he be "stalled." Given his intimate involvement with all facets of the Center's operations, Treat may be guilty as a principal under section 18-1-602, C.R.S. 1973 (complicity), or section 18-1-607, C.R.S. 1973 (criminal liability of individual for corporate conduct), or both. *See also Hartson v. People*, 125 Colo. 1, 240 P.2d 907 (1951).

Nor is it essential, as the defendant contends, that Treat have transferred the money into an account solely under his own control, rather than the corporate account. Under the theft statute and prior Colorado cases, it is sufficient that the intended use of the money be inconsistent with the owner's use or benefit. In other words, it is only required that the defendant knowingly exercise unauthorized control over the property, with one of the requisite intents; it is *not* necessary that he maintain absolute control for his own personal use. *Hartson v. People, supra.*

Given the substantial evidence that Treat in fact controlled the Center's entire operation, plus the additional circumstantial evidence that he received money from the Center vastly in excess of his salary, there is a sufficient basis to require that he be held for trial on Count One.

### B. *Count Two*

The trial court dismissed Count Two because it found insufficient evidence "to support probable cause that this particular defendant took that money from Kayton." Again, however, it is not grounds for dismissal that Treat did not personally participate in every part of the transaction if, as the evidence indicates, he was the causative force behind acts performed in the corporation's name. Section 18-1-607, C.R.S. 1973; *Hartson v. People, supra.* There is sufficient evidence to support a reasonable inference that the Withers-Kayton transaction was a unified scheme, designed and intended to deprive both owners of their property, and that the defendant instigated and directed that scheme.

### II.

Count Four, for felony theft, arose from the following transaction: Woody Cornwell decided to trade in his motor home, for which he still owed money, on a more popular and more expensive vehicle to be held as a rental property. The Center was to serve as rental agent. Treat promised to pay the outstanding loan on the old motor home; for that and the new vehicle Cornwell paid the Center $12,000. The payment consisted of $2,000 of Cornwell's own money together with a bank draft conditioned upon payment of Cornwell's prior trailer loan.

Treat deposited Cornwell's $2,000 in the corporate bank account, but the deal fell through when Treat failed to pay off the prior loan, and the bank consequently refused to honor the $10,000 draft. Although Cornwell recovered his first vehicle and received $1,000 in rental income, he never recovered his $2,000 payment.

The trial court predicated dismissal of this count upon the prosecution's failure to show that Treat had the requisite intent when he *accepted* Cornwell's money. We hold that such a showing was not necessary.

The statute provides that a person commits theft when he knowingly "obtains *or exercises*" control over a thing of value, without authorization or by deception, and with the requisite intent. Section 18-4-401(1), C.R.S. 1973 (emphasis added). This provision makes it clear that theft can occur even though initial control of the property has been authorized; the intent to deprive, or knowing use inconsistent with the owner's benefit, may arise at a later time when control is no longer authorized. At that time, the requisite elements of theft exist. *See e.g., Poe v. People, supra.*

Here, after the Cornwell deal fell through, Treat was no longer authorized to retain Cornwell's payment. Therefore, one of the requisite alternatives with respect to intent may be inferred from the evidence of Treat's actions, including his having received money from the Center substantially in excess of his salary, and his subsequent departure to Kansas City.

### III.

Count Five, for felony theft, arose after one Powers purchased a motor home from the Center for use as rental property. The parties agreed to share rents and some of the costs. While the Center had the vehicle it was driven approximately 15,000 miles, but Powers was not paid any rental income. Powers recovered possession of the vehicle and eventually received $500 from the Center, but $727 in rents remained unpaid.

Regarding this transaction, the trial court correctly relied upon *Kelley v. People*, 157 Colo. 417, 402 P.2d 934 (1965), in dismissing the theft count. No evidence showed that the Center was an agent for the purpose of rental collections, or that specific rental funds were to be set aside for payment to Powers. Powers' only concern was that he be paid his share of the rents collected; no money collected by Treat became Powers' property until it was transferred by Treat in payment of the obligation. Given those facts, without more, no inference can be drawn that Treat unlawfully exercised control over property of another with intent to deprive him of it. This was simply a debtor-creditor controversy, properly to be resolved by civil proceedings. *Kelley v. People, supra.*

### IV.

Count Six charged unlawful taking of money from Mr. and Mrs. Tuck and Robert Burns, joint owners of a trailer. The parties agreed that the Center would sell the Tucks' trailer on consignment for $8,011, the amount remaining due on the trailer loan. Treat promised to pay the loan, but after making one payment he defaulted.

Some time later, Treat told Burns that the trailer had been sold for $7,800, and that the Center needed $700 more for selling the unit. Burns

reluctantly agreed to pay an additional $360. The sale fell through, however, because Treat failed to cash or deposit the draft which the buyer (Treat's cousin) had used to purchase the vehicle. In addition, while the sale had been pending, the prospective buyer had collected $600 in rental income for the trailer, despite the fact that rental was never authorized by the Tucks or by Burns.

The Tucks and Burns recovered the trailer, but never received any rental income; nor was the $360 payment returned. As in the other transactions, when Burns pressed for payment, he was "put off," and reassured that payment was forthcoming.

Count Six was dismissed because the trial court found, without elaborating, that there was no probable cause to believe the defendant had committed the crime alleged. Again, we disagree.

It is possible to apply our foregoing analysis to this transaction as well. The record shows that Treat, directly and through the Center and its employees, retained control over Burns' money long after the sale for which it was paid had been aborted. Treat's intent permanently to deprive Burns of his money is likewise inferrable from the evidence of Treat's stalling techniques, his flight from the state, and his appropriation of corporate funds in excess of his salary. *See People v. Todd,* 189 Colo. 117, 538 P.2d 433 (1975); *Lewis v. People,* 174 Colo. 334, 483 P.2d 949 (1971); *Woodman v. People,* 168 Colo. 80, 450 P.2d 330 (1969). Thus probable cause to believe a theft occurred was established, and the evidence should have been presented at trial for resolution of the fact questions.

In conclusion, when the evidence adduced at the preliminary hearing is viewed most favorably to the prosecution, it supports a finding of probable cause to believe that the defendant committed the crimes alleged in Counts One, Two, Four, and Six. Therefore, it was error to dismiss those counts at the preliminary hearing stage.

Accordingly, the order of the trial court is affirmed as to Counts Three and Five, and reversed as to Counts One, Two, Four and Six. The cause is remanded for further proceedings consistent with this opinion.

MR. JUSTICE GROVES concurs, but dissents as to Counts Four and Six.