RANDALL C. CARLSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carlson v. Commissioner
Docket No. 8899-82.
United States Tax Court
T.C. Memo 1984-276; 1984 Tax Ct. Memo LEXIS 397; 48 T.C.M. (CCH) 154; T.C.M. (RIA) 84276; May 23, 1984. *397 Held: Petitioner failed to prove that he is entitled to a deduction for a loss by theft. Randall C. Carlson, pro se. Byron Calderon, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $5,327.00 in petitioner's Federal income tax for his taxable year 1979. The only issue is whether petitioner sustained a deductible theft loss under section 165(c)(3). *398 [1]
Some of the facts have been stipulated, and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Randall C. Carlson timely filed an individual Federal income tax return for his taxable year 1979. He resided in Boulder, Colorado at the time he filed his petition herein. During February, 1979 petitioner was employed as a vault teller at the First National Bank of Ft. Collins, Colorado (the Bank). He had held that position since May, 1978. Petitioner began working at the Bank after completing one year of studies at Colorado State University. Prior to that, petitioner attended Augustana College in Moline, Illinois, and had worked for more than four years at a bank in Moline. On February 8, 1979, petitioner removed $30,000 in cash from the Bank. Petitioner intended to use the money to finance an illegal drug transaction, from which he expected to make a profit so that he could return the money to the bank before his embezzlement was discovered. Petitioner claims that he was swindled by his two accomplices in the *399 proposed drug transaction, whom he identified as Guy Lupo and Stan Hime. His version of these events is as follows. After taking the money from the Bank, petitioner drove with Lupo to a motel off an Interstate highway where the drug transaction was to take place.Hime arrived in a separate car. Petitioner gave the $30,000 to Hime, who was to purchase marijuana from certain unidentified dealers, in coordination with Lupo. Hime and Lupo left petitioner and presumably went into the motel with the $30,000. Petitioner, meanwhile, drove to a nearby service station to repair a taillight. He returned to the motel and rendezvoused with Hime, expecting to proceed to Denver or Boulder to sell the marijuana. Instead, Hime told petitioner nothing about what transpired, and petitioner did not ask him. Hime and petitioner returned to Fort Collins. The next day, Hime and Lupo informed petitioner that they had been robbed at gunpoint by the alleged drug dealers. The three men then agreed to stage a fake bank robbery in order to cover up the embezzlement. However, Lupo and Hime never appeared at the arranged time, and petitioner has not heard from them since. On February 24, 1979, petitioner *400 disclosed the embezzlement to bank officials and the Federal Bureau of Investigation. Petitioner was indicted for embezzlement, and pleaded guilty in May, 1979. Petitioner has not returned the $30,000 to the bank. Upon questioning by the FBI petitioner indicated that he believed Lupo and Hime when they told him they were held up and robbed by the drug dealers. Upon reflection while in jail, he concluded that Lupo and Hime were not robbed but simply absconded with the money. Petitioner has never asked Lupo and Hime to return the money, has never made any effort to collect it and apparently has had no contact with either of them since the incident. He does not know whether Hime or Lupo were questioned about the incident or were indicted by the FBI. Petitioner did not report the incident to the local police. On his Federal income tax return for 1979, petitioner reported the $30,000 in embezzled money as income, and claimed a deduction for a theft loss in the amount of $29,900. [2] Respondent denied the deduction because it had not been established that any amount of loss was sustained during the taxable year. *401 Petitioner has the burden of proving that he is entitled to the deduction. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). He must show that he has sustained a loss during the taxable year, and that such loss was caused by theft. Sections 165(a), 165(c)(3).To show that a theft of property occurred within the meaning of section 165(c)(3) petitioner must establish that the loss of property constituted a theft under the laws of the jurisdiction where the loss occurred. Monteleone v. Commissioner,34 T.C. 688, 692 (1960). Colo. Rev. Stat., sec. 18-4-401(1)(a) (1973) provides: 18-4-401, Theft. (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and; (a) Intends to deprive the other person permanently of the use or benefit of the thing of value. * * * In general, the term "theft" in section 165(c)(3) has been interpreted to include any criminal appropriation of another's property, including theft by swindling, false pretenses, and any other form of guile. Edwards v. Bromberg,232 F.2d 107, 110 (5th Cir. 1956); *402 Vietzke v. Commissioner,37 T.C. 504, 511 (1961); section 1.165-8(d), Income Tax Regs.
It is not entirely clear what theory petitioner relies on in his effort to establish that a theft occurred. If Lupo and Hime were actually held up and robbed of the $30,000 by third parties, the loss to petitioner would probably qualify as a theft, through his agents, under Colorado law, White v. People,172 Colo. 271, 472 P.2d 674 (1970), although we have found no Colorado cases directly in point. If, however, Lupo and Hime intended from the start to abscond with the money, they would have obtained the money from petitioner by deception or false pretenses which would also qualify as a theft under Colorado law. Howe v. People,178 Colo. 248, 496 P.2d 1040 (1972); Norman v. People,178 Colo. 190, 496 P.2d 1029 (1972); Woodman v. People,168 Colo. 80, 450 P.2d 330 (1969). The fact that petitioner initially authorized Lupo's possession of the money does not preclude a theft, as long as Lupo and Hime had the requisite unlawful intent. People v. Treat, 193 Colo. 570, 568 P.2d 473 (1977). However, *403 if either or both of the above versions of what happened would qualify as a theft under Colorado law, if proven, we agree with respondent that on the record herein, petitioner has failed to establish by competent and convincing evidence that he sustained a deductible theft loss. The only convincing evidence, it being an admission against interest, is that petitioner took the $30,000 from the bank and failed to return it. The only evidence of what happened thereafter concerning the disposition of the embezzled money is petitioner's uncorroborated testimony.[3] Petitioner's record of embezzlement hardly enhances his credibility, [4] and we are unable to accept this self-serving testimony on this aspect of the incident. Moreover, there are several other factors which undermine petitioner's case.
*404 There is no independent verification that Lupo and Hime had any connection with petitioner or played any role in the alleged drug transaction. There is no evidence that they were ever questioned by the FBI in connection with the events petitioner reported. Petitioner never reported the incident to the local police. He has made no attempt to recover the money; in fact, he seems to have had no contact with Lupo and Hime apart from the alleged swindle. The absence of any evidence other than petitioner's testimony tying Lupo and Hime to these events leaves us in the realm of conjecture. Petitioner's own uncertainty regarding what transpired only compounds the confusion. There are other aspects of petitioner's story that are difficult to accept. Although petitioner testified that he had known Lupo and Hime for only a short time, he claims that he gave them $30,000 in cash which he had taken from the bank vault, with which to purchase marijuana from certain unidentified dealers, while he left to repair a taillight. According to petitioner, he never even questioned Hime when he returned without the marijuana or the money. Petitioner must have realized at that time that he alone would *405 be held responsible for the money taken from the bank vault if it was not replaced within a short time -- yet he did not inquire about it. It was not long after the embezzlement that petitioner confessed -- yet he took no action to prove what happened to the money. The plans for the fake bank robbery are equally incredible. We do not disagree with petitioner's statement that a taxpayer claiming a theft loss under section 165(c)(3) need not offer the testimony of the thief, or show a criminal conviction. See Monteleone v. Commissioner,supra at 694; Jones v. Commissioner,24 T.C. 525 (1955). See also Skolnik v. Commissioner,55 T.C. 1055, 1062 (1971). However, to allow a theft loss deduction on the evidence in this case would open the gates to claims limited only by the imagination. We are not convinced that petitioner sustained any loss by theft. [5]
*406 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as effective during 1979.↩
2. As effective in 1979, sec. 165(c) allowed a deduction only to the extent that the amount of the loss exceeded $100.↩
3. The FBI report concerning the embezzlement, which includes a summary of interviews with petitioner during which he related a story substantially similar to his testimony herein, was received in evidence. While we admitted the report as evidence of petitioner's statements at that time, the report, as hearsay, cannot be relied upon to prove the truth of those statements. ↩
4. Petitioner testified that on one previous occasion he had removed $500 from the bank vault and concealed the shortage with mutilated money; and that on another occasion he removed $20,000 from the bank vault to enter into drug transactions but was able to replace the entire amount before the shortage was discovered.↩
5. Our finding that petitioner has failed to substantiate any theft loss makes it unnecessary to consider respondent's alternative argument that, even if the theft loss had occurred, the deduction should be disallowed as a matter of public policy because it arose from an illegal drug transaction.↩